IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALISHA STEWART,

                        Plaintiff,

v.                                                      OPINION and ORDER

ANTHONY WANG and                                20-cv-179-jdp
ABC INSURANCE COMPANY,

                        Defendants.

---

Plaintiff Alisha Stewart is a professional water skier. She spent the summer of 2018 living near the Wisconsin Dells and performing in a water ski show there and competing with a Madison water ski team, the Mad-City Ski Team. She was injured when she collided with a buoy during a practice for Mad-City. She brings a negligence claim against defendant Anthony Wang, the driver of the boat.[1]

Wang moves for summary judgment on the ground that Stewart signed a liability waiver that bars her claim. Dkt. 22. The court concludes that Wisconsin law applies and under that law, the liability waiver is unenforceable. Wang's motion for summary judgment will be denied.

UNDISPUTED FACTS

The following facts are not in dispute. Plaintiff Alisha Stewart is a professional water skier and a citizen of Australia. Defendant Anthony Wang is a volunteer boat operator for the

---

[1] Stewart also includes ABC Insurance Company in the caption of the complaint. But Stewart has neither moved to amend her complaint to name the insurance company nor asked for an extension of time to do so, so the court will dismiss the unnamed defendant.

Mad-City Ski Team, a Madison, Wisconsin-based water ski team that performs locally and competes in national and regional water ski tournaments.

From 2017 to 2019, Stewart spent her summers working in the Wisconsin Dells for the Tommy Bartlett water ski show held on Lake Delton. Stewart also participated in local water ski competitions organized by USA Water Ski & Wake Sports, a national non-profit association that promotes and governs the sport of competitive water-skiing. In 2018, Stewart decided to compete with Mad-City in the Wisconsin State Water Ski Competition, which is organized by USA Water Ski. Mad-City is a club affiliated with USA Water Ski.

Mad-City and USA Water Ski require that all skiers become active members of USA Water Ski before joining or participating in any competition. The water skier must fill out several forms though an online portal to receive a membership number. One of the required forms was a "Participant Waiver and Release of Liability Assumption of Risk and Indemnity Agreement," Dkt. 33-8, which the court will refer to as the liability waiver. The liability waiver released a large set of parties associated with USA Water Ski from claims arising from participation in any USA Water Ski-sanctioned event, including practices with affiliated clubs.

USA Water Ski received signed forms from Stewart and issued her a membership number in June 2018. The signature line of the liability waiver states "Signed electronically during join process (Adult)," *id.*, but the parties dispute whether Stewart, a friend's mother, or someone else completed the forms. Mad-City also required a separate set of forms, including its own liability waiver, but Stewart did not complete those, and Mad-City accepted her onto the team anyway.

On July 13, 2018, a few days before the Wisconsin State Water Ski Competition, Stewart and Wang had a practice session at Lake Delton, near where Stewart lived. Wang

2

trailered a Mad-City boat from Madison to Wisconsin Dells. While Wang was towing Stewart as she practiced barefoot water ski maneuvers on Lake Delton, Stewart struck a buoy. She fractured her foot and sustained lacerations and other injuries, which required surgery and ended her water ski season.

This case was removed from state court on the basis of diversity jurisdiction. Wang is a citizen of Wisconsin and Stewart is a citizen of Australia, and the amount in controversy exceeds $75,000, so the requirements for diversity jurisdiction are met under 28 U.S.C. § 1332. The court will discuss additional facts as they become relevant to the analysis below.

## ANALYSIS

Stewart claims that Wang negligently operated the speed boat during the practice session and caused her to collide with the buoy. Wang moves for summary judgment, contending that Stewart's claim is barred by the USA Water Ski liability waiver. Stewart counters that the liability waiver is unenforceable for several reasons.

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The facts pertinent to the court's decision on the enforceability of the liability waiver are not disputed.

### 1. Admiralty jurisdiction and choice of law

A threshold question in this case is whether federal admiralty law or Wisconsin law applies to Stewart's claim. Ordinarily, Wisconsin law would apply to a tort claim arising from an accident occurring in Wisconsin. In diversity cases, federal courts apply the choice-of-law rules of the forum state. *Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 26, 251 Wis. 2d 561,

577, 641 N.W.2d 662, 670. Under Wisconsin's choice-of-law rules, Wisconsin law would apply because Stewart's injury occurred here and no other state has significant contacts to the claim. *Honorato v. Mt. Olympus Enterprises, Inc.*, No. 20-cv-903-jdp, 2021 WL 4439073, at *2 (W.D. Wis. Sept. 28, 2021).

But Wang contends that federal admiralty law applies because Stewart's claim falls within the court's jurisdiction to hear admiralty and maritime cases under Article III of the Constitution. U.S. Const. art. III, § 2; 28 U.S.C. § 1333(1). If the court has admiralty jurisdiction over a claim, and there is applicable admiralty law on the particular issue, it must apply admiralty law. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545 (1995); *Lakeshore Sail Charters, LLC v. Acadia Ins. Co.*, 168 F. Supp. 3d 1048, 1053 (N.D. Ill. 2016). The parties agree that the question of admiralty jurisdiction matters in this case because the standards for determining whether Stewart's liability waiver is enforceable are substantially different under admiralty and Wisconsin law. They also agree that admiralty law is more accepting of liability waivers than Wisconsin law is.

A party seeking to invoke admiralty jurisdiction over a tort claim must satisfy the conditions of a two-part test: (1) the incident in question must have occurred on navigable waters; and (2) the activity giving rise to the incident must have a connection with maritime activity and commerce. *Jerome B. Grubart, Inc.*, 513 U.S. at 534; *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 382 (7th Cir. 2001).

The court concludes that Lake Delton is a not navigable waterway, so there is no admiralty jurisdiction in this case, and Wisconsin law applies. A body of water is navigable for purposes of admiralty jurisdiction if it is used or capable of being used as a highway for commerce, trade, and travel on water. *Weaver*, 255 F.3d at 382 (citing *Daniel Ball*, 10 Wall.

4

557, 77 U.S. 557, 19 L.Ed. 999 (1870)). The body of water must itself form or connect with other waters to "form a continued highway over which commerce is or may be carried on with other states or foreign countries." *Id.* In other words, Lake Delton must allow maritime commerce to reach another state or country by bordering, flowing into, or connecting to other waters that ultimately reach, another state or country.

Wang has submitted none of his own evidence to show Lake Delton's characteristics or to demonstrate that there is admiralty jurisdiction over Stewart's claim. Other evidence in the case shows that Lake Delton is non-navigable. According to Stewart's undisputed evidence, Lake Delton is a man-made lake created for recreational purposes in 1927 when Dell Creek, a 15-mile stream system, was dammed at its confluence with the Wisconsin River. Dkt. 33-3–9. Lake Delton is located entirely within the state of Wisconsin. *Id*. On the upstream end, it is fed by Dell Creek and its tributaries. *Id*. The downstream end of Lake Delton is dammed near the Wisconsin River. *Id*.

This information does not quite resolve the core questions of whether Dell Creek flows through any other state, and whether the dam at Lake Delton allows maritime traffic to reach the Wisconsin River, which in turn flows into other states. But under Federal Rule of Evidence 201, the court may take judicial notice of facts that are "not subject to reasonable dispute" because they can be "determined from sources whose accuracy cannot reasonably be questioned." To understand geographic locations that parties refer to in a case, courts may take judicial notice of Google maps. *Hicks v. Cook Cnty. Sheriff's Off.*, No. 15 C 6852, 2020 WL 1322844, at \*9 (N.D. Ill. Mar. 19, 2020); *see also Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177 (7th Cir. 2013). The court therefore takes judicial notice of Google maps and satellite

images of Lake Delton to identify the geographic location of Dell Creek and the status of the dam. Two maps and one of the satellite images are appended to this opinion.

The maps show that the Dell Creek stream system is located entirely within Wisconsin, and that it is implausible that any upstream waterway in the 15-mile stream system could allow maritime commerce to reach any other state. The satellite image shows that the dam between Lake Delton and the Wisconsin River is a concrete structure that cannot be passed by boat or other commercial traffic. A lake within a single state that cannot be navigated past a dam to other waters is not navigable for admiralty jurisdiction purposes. *See Weaver*, 255 F.3d at 383 (7th Cir. 2001); *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, 921 F.2d 775, 779 (8th Cir. 1990) (impassable dam defeats admiralty jurisdiction); *Macgowan v. Cox*, 487 F. App'x 930, 931 (5th Cir. 2012) (single state-bound lake with impassable dams on both sides is not a navigable waterway); *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999) (body of water is non-navigable when impassable dams block commercial traffic from using the waterway as an interstate highway system). Lake Delton is not a waterway capable of being used for interstate maritime commerce. *See Weaver*, 255 F.3d at 382.

Wang cites *State v. Vill. of Lake Delton*, 93 Wis. 2d 78, 286 N.W.2d 622, (Ct. App. 1979), contending that it supports "the proposition that Lake Delton is a navigable waterway for purposes of applying admiralty jurisdiction." Dkt. 38, at 16. But *Village of Lake Delton* did not directly address the issue of whether Lake Delton is navigable. The case didn't apply a navigable waters test, involve admiralty jurisdiction, or discuss any characteristics of the lake that are relevant to the admiralty jurisdiction inquiry. *Id*. Rather, *Village of Lake Delton* dealt with whether a zoning ordinance violated constitutional and statutory provisions involving navigable waters under state law. 286 N.W.2d 622. The term navigable waters has legal

6

significance in areas other than admiralty jurisdiction and it has different meanings in different contexts. *Admiralty Jurisdiction in Tort Cases,* Federal Judicial Center: Admiralty & Maritime Law, 2nd ed. (2013). Just because the constitutional provisions and statutes at issue in *Village of Lake Delton* refer to navigable waters does not mean that Lake Delton is "navigable" as that term is used in admiralty law. *Village of Lake Delton* is not relevant to this case.

Wang also contends for the first time in his reply brief that that the court has admiralty jurisdiction over Stewart's claim because the liability waiver is a maritime contract, which provides another basis for admiralty jurisdiction. But Wang failed to raise that issue in his opening brief, so the argument is forfeited. *See White v. United States*, 8 F.4th 547, 552–53 (7th Cir. 2021).

Wang hasn't shown that this case is within the court's admiralty jurisdiction; Wisconsin law applies.

2. **Enforceability of the liability waiver**

Wang contends that the USA Water Ski liability waiver bars Stewart's negligence claim even under Wisconsin law. Stewart says that the liability waiver is unenforceable for three reasons: (1) it is void as a matter of public policy; (2) it was not properly executed because Stewart personally did not sign it; and (3) it did not cover the practice session during which Stewart was injured. The court concludes that the liability waiver is unenforceable for public policy reasons and on that ground it will deny Wang's motion for summary judgment.

It is well-established that Wisconsin law disfavors liability waivers, commonly referred to as exculpatory agreements. *See, e.g., Roberts v. T.H.E. Ins. Co.*, 2016 WI 20, ¶ 22, 367 Wis. 2d 386, 397, 879 N.W.2d 492, 497. This is because they tend to encourage conduct below the acceptable standard of care. *Richards v. Richards*, 181 Wis. 2d 1007, 1015, 513 N.W.2d 118,

121 (1994). Liability waivers are not unenforceable as an absolute rule, but the bar to enforcement is high. Wisconsin's skepticism of liability waivers is amply shown in the caselaw: the Wisconsin Supreme Court has not upheld a liability waiver in more than four decades. Alexander T. Pendleton, *Enforceable Exculpatory Agreements: Do They Still Exist?* 78 Wis. Law. 16 (August 2005) ("The Wisconsin Supreme Court has now considered exculpatory agreements in six cases in 25 years, and each time has found the agreement as drafted to be unenforceable"); *Roberts*, 2016 WI 20, ¶ 4 (hot air balloon ride operator's liability waiver was invalid on public policy grounds).

The Wisconsin courts' analytical approach to liability waivers has evolved in recent years. Specifically, courts remained focused on the same set of concerns, but those concerns have been recast from contract interpretation to a set of public policy factors. The court will ground its analysis of the liability waiver in this case in the two most recent Wisconsin Supreme Court liability waiver cases, *Atkins* and *Roberts*. *Atkins v. Swimwest Fam. Fitness Ctr.*, 2005 WI 4, ¶ 1, 277 Wis. 2d 303, 307, 691 N.W.2d 334, 336; *Roberts*, 2016 WI 20.

To determine whether a liability waiver is enforceable, Wisconsin courts are to apply a two-part analysis. First, the court examines the language, facts, and circumstances of the waiver to determine if it was broad enough to cover the activity at issue. *Roberts,* 2016 WI 20, ¶ 49. Second, if the language of the contract covers the activity, the court considers the liability waiver under a set of public policy factors. *Id*. Noting that the contractual inquiry in older cases often addressed many of the same factors that are now reviewed on policy grounds, the court held that the public policy inquiry is now the "germane analysis for exculpatory clauses." *Atkins*, 2005 WI 4, ¶ 13.

In *Atkins* and *Roberts,* the Wisconsin Supreme Court focused the public policy analysis on three key factors: (1) whether the significance of the waiver document is clear; (2) whether the release is ambiguous or overly broad; and (3) whether circumstances afforded an opportunity to bargain or negotiate the terms of the release. *See Atkins*, 2005 WI 4, ¶ 18; *Roberts*, 2016 WI 20, ¶ 58. The parties contest the analysis of all three factors.

The question under the first public policy factor is whether the liability waiver uses a form that notified the signer of the nature and significance of the document being signed. *Atkins*, 2005 WI 4, ¶ 24. In *Atkins*, for example, the court determined that a swimming pool liability waiver printed inconspicuously on a small card that also served as a guest registration did not provide adequate notice of the waiver's significance. *Id*. In this case, the liability waiver stood as a separate document, clearly labeled "Participant Waiver and Release of Liability Assumption of Risk and Indemnity Agreement," and it focused on a unified set of topics involving the risks of skiing and the terms of the release. Dkt. 33-8. The nature and significance of the USA Water Ski waiver were clear, so that factor favors enforcement.

The second factor concerns two related concepts, whether the liability waiver is clear and whether it is overly broad. Three provisions in the liability waiver are most pertinent to this inquiry. The first provision asks the skier to acknowledge a long list of risks and to assume all of them. The provision provides:

> I understand, acknowledge, and assume the risks and dangers associated with participation in the sport of water skiing . . . including without limitation, the potential for serious bodily injury, sickness and disease, permanent disability, paralysis and loss of life; loss of or damage to equipment/property; exposure to extreme conditions and circumstances; contact with other participants, spectators, boats, animals or other natural or manmade objects; dangers arising from adverse weather conditions; imperfect ski course conditions; water and surface hazards; equipment failure; inadequate safety measures; participants of varying skill levels; situations

9

> unknown to or beyond the immediate control of the Event Organizers; and other undefined, not readily foreseeable and presently unknown risks and dangers ("Risks"). I understand that these Risks may be caused in whole or in part by my own actions . . . or the negligent acts or omissions of the Released Parties . . .

Dkt. 33-8.

The second pertinent provision states the scope of the release itself and identifies the released parties. As with the first provision, the scope of the release and the list of released parties is very comprehensive. The release provision covers:

> [USA Water Ski], its members, clubs, associations, sport disciplines and divisions . . . the Event Organizers and Promoters, Sponsors, Advertisers, Coaches and Officials; Lake, Venue and Property Owners or Operators upon which the Event(s) takes place; Boat Owners and Operators; Law Enforcement Agencies and other Public Entities providing support for the Event(s); and each of their respective parent, subsidiary and affiliated companies, officers, directors, partners, shareholders, members, agents, employees and volunteers . . . with respect to any . . . claim(s) . . . of any kind or nature[] which may arise out of, result from, or relate in any way to my participation in the Event(s), including claims for Liability caused in whole or in part by the negligent acts or omissions of the Released Parties.

*Id*.

The third pertinent provision is an indemnification clause, which calls for the skier to bear the expense of any claim asserted by, or on behalf of, the skier:

> I further agree that if, despite this Agreement, I, or anyone on my behalf, makes a claim for Liability against any of the Released Parties, I will indemnify, defend and hold harmless each of the Released Parties and Event Organizers from any such claims, demands, liabilities, losses, expenses or damages which any may be incurred as the result of such claim.

*Id.*

A waiver cannot be so broad and inclusive that it could excuse the defendant from any claim arising from any scenario. *Atkins*, 2005 WI 4, ¶ 19; *Roberts*, 2016 WI 20, ¶ 59. In *Atkins*,

10

for example, the court invalidated the swimming pool's liability waiver in part because it stated that the swimmer assumed "all liability for myself without regard to fault." 2005 WI 4, ¶ 19. The court reasoned that this language could be interpreted to bar any claim, even one involving recklessness or intentional acts. *Id.*; *see also Roberts,* 2016 WI 20, ¶ 60 (hot air balloon ride waiver expressly requiring signer to "assume full responsibility for all risks of any and every kind" absolved defendant for any activity for any reason).

The liability waiver here is superficially specific in that it includes a detailed list of risks and injuries associated with water skiing and contains a defined list of released parties. A liability waiver seeking to release a defendant from claims of negligent acts must clearly communicate that in the waiver using the word "negligence." *Yauger v. Skiing Enterprises, Inc.*, 206 Wis. 2d 76, 84, 557 N.W.2d 60, 63 (1996); *see also Atkins,* 2005 WI 4, ¶ 20. The liability waiver here expressly covers USA Water Ski and its affiliates' negligent acts. Dkt. 33-8.

But despite its apparent specificity, the liability waiver is dauntingly broad. The list of released parties includes virtually anyone who might be associated with a USA Water Ski event, with the possible exception of the audience members. The list of specified risks is long, and it includes a couple of catch-all categories. "Inadequate safety measures" could cover just about anything. Dkt. 33-8. And the list includes "other undefined, not readily foreseeable and presently unknown risks and dangers." *Id*. The risks covered by the release are unlimited.

The daunting breadth of the liability waiver also creates ambiguities. The liability waiver expressly includes claims based on the negligent acts of the released parties. But it does not limit the waiver to claims of negligence. The release covers "any . . . claim(s) . . . of any kind or nature[] which may arise out of, result from, or relate in any way to my participation in the Event(s)." *Id*. And the indemnification clause requires the skier to indemnify the released

11

parties from any claim brought by or on behalf of the skier. These parts of the liability waiver would include claims based on gross negligence, recklessness, or even intentional misconduct. By its terms, the liability waiver is either ambiguous or unreasonably broad.

The liability waiver also states that it applies to USA Water Ski-sanctioned events, but the circumstances of this case reveal ambiguities about that concept. It is undisputed that USA Water Ski did not formally sanction the practice session in which Stewart was injured until after it occurred. Wang contends that the waiver applies to the practice because the parties understood it to be a USA Water Ski event and USA Water Ski retroactively sanctioned it. But the ability to retroactively sanction an event, and thus bring it within the scope of the liability waiver, after a skier has been injured is patently unreasonable. A liability waiver must be strictly construed against the party seeking to rely on it. *Roberts*, 2016 WI 20, ¶ 22. If the term "USA Water Ski-sanctioned event" were strictly construed against Wang, it would only apply to an event that is sanctioned at the time that it occurred. This conclusion touches on Stewart's second argument in opposition to summary judgment, which the court will not fully address. But the problem also demonstrates a significant potential ambiguity in the liability waiver.

Because the liability waiver is unreasonably broad or ambiguous, the second factor weighs strongly against its enforceability.

The third factor also cuts against the waiver's enforceability. Whether a liability waiver offers an opportunity to bargain or negotiate its terms is a "significant" factor in deciding if a waiver is enforceable. *Atkins,* 2005 WI 4, ¶ 26. It is not enough to inform a participant about a liability waiver and give them an opportunity to read it and ask questions. *Id.* "The form itself must provide an opportunity to bargain." *Id.* Here, the liability waiver's language doesn't state

12

that Stewart had any opportunity to bargain or negotiate with USA Water Ski over the contract's terms. It is undisputed that Stewart was required to sign the liability waiver before she joined Mad-City or participated in water ski competitions, and generally speaking, when a plaintiff is told that they must sign a waiver to participate in an activity without a chance to negotiate, there is no opportunity to bargain. *Roberts*, 2016 WI 20, ¶ 61.

Wang relies primarily on *Dobratz v. Thomson* to support his position that the liability waiver is not unenforceable on public policy grounds. 161 Wis. 2d 502, 522, 468 N.W.2d 654, 661 (1991). *Dobratz* has some factual similarities to this case because it involved a water skier killed while participating in a club-sponsored water ski show. *Id*. Prior to participating in any practices or performances, he was required to sign a liability waiver. *Id*. The court held that the waiver was not void as a matter of public policy. *Id.* at 660. Wang contends that the public policy analysis in *Dobratz* should apply here.

But the *Dobratz* public policy analysis doesn't apply for two reasons. First, the public policy analysis in *Dobratz* was confined to a handful of factors set out in the Restatement of Contracts and to whether the waiver contained misrepresentations. *Id*. at 659 (*citing Merten v. Nathan,* 108 Wis. 2d 205, 321 N.W.2d 173 (1982)). More recent precedent supports a more expansive consideration of policy factors, including particularly the opportunity to bargain. Second, the *Dobratz* court held that the liability waiver was unenforceable as a matter of contract law because it was overly broad and ambiguous. *Id*. at 661–62, 663. Under current precedent, overbreadth and ambiguity are public policy factors.

The court concludes that the liability waiver is unenforceable as a matter of public policy because it is overbroad and ambiguous and Stewart was afforded no opportunity to bargain its terms. Wang's motion for summary judgment will be denied. The court previously struck the

13

trial date and pretrial schedule in this case, so the court will schedule a conference with the parties to set a new case schedule.

ORDER

IT IS ORDERED that:

1. Defendant Anthony Wang's motion for summary judgment, Dkt. 22, is DENIED.

2. Defendant ABC Insurance Company is DISMISSED.

3. The clerk of court is directed to set a scheduling conference with Magistrate Judge Stephen Crocker to reset the trial date and pretrial schedule.

Entered February 28, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

Google map of Lake Delton



Google map of the broader Lake Delton area



Google satellite view of the dam between Lake Delton and Dell Creek

